1  James M. Lindsay, State Bar No. 164758
Gene J. Stonebarger, State Bar No. 209461
2  LINDSAY & STONEBARGER
A Professional Corporation
3  620 Coolidge Drive, Suite 225
Folsom, CA 95630
4  Telephone: (916) 294-0002
Facsimile: (916) 294-0012
5
James R. Patterson, State Bar No. 211102
6  Harry W. Harrison, State Bar No. 211141
HARRISON PATTERSON & O'CONNOR LLP
7  402 West Broadway, 29th Floor
San Diego, CA 92101
8  Telephone: (619) 756-6990
Facsimile: (619) 756-6991
9
Attorneys for Plaintiff and the Class
10

11                  **UNITED STATES DISTRICT COURT**

12                  **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  LESLIE JOHNSON, individually; on behalf of ) CASE NO.: 008CV0766-LAB (NLS)
herself and all others similarly situated,         )
15                                                         ) **CLASS ACTION**
                     Plaintiffs,                           )
16                                                         ) **PLAINTIFF'S NOTICE OF MOTION**
     vs.                                                   ) **AND MOTION FOR REMAND TO**
17                                                         ) **SUPERIOR COURT; MEMORANDUM**
     LERNER NEW YORK,  a Delaware                  ) **OF POINTS AND AUTHORITIES IN**
18  Corporation; and DOES 1 through 50 inclusive, ) **SUPPORT THEREOF**
                                                           )
19                  Defendant.                             ) **Date:        September 8, 2008**
                                                           ) **Time:        12:00 p.m.**
20                                                         ) **Courtroom:   9, 2nd Floor**
                                                           ) **Judge:       Hon. Larry Alan Burns**
21  _____ )

22

23

24

25

26

27

28

LINDSAY & STONEBARGER
A Professional Corporation

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 2

II.     PLAINTIFF'S MOTION FOR REMAND IS TIMELY ............................................ 3

III.    DEFENDANT BEARS THE BURDEN OF PROVING REMOVAL IS PROPER .......... 3

IV.     DEFENDANT HAS FAILED TO SHOW THAT THE AMOUNT IN
        CONTROVERSY IN THIS CASE EXCEEDS $5,000,000 ............................................ 4

        A.      Defendant Cannot Meet Its Burden To Establish The Amount In Controversy
                Is Satisfied By Arguing That A $1,000 Penalty Will Be Imposed For Each
                Violation. ............................................................................................................... 5

        B.      Defendant Has Failed To Establish Any Factual Connection Between Its
                5,001 Credit Card Transactions And The Number Of Class Members. ................. 7

        C.      The Clear Language In Plaintiff's Complaint Renders Any Reliance On
                Saulic v. Symantec Corp. Improper. ....................................................................... 9

V.      DEFENDANT HAS FAILED TO PLEAD SUFFICIENT FACTS TO
        ESTABLISH THAT IT IS NOT A CITIZEN OF CALIFORNIA .................................. 10

VI.     DEFENDANT HAS FAILED TO ALLEGE ANY FACTS TO PROVE THE
        ULTIMATE SOURCE OF THIS COURT'S POWER OVER THIS ACTION .............. 11

VII.    CONCLUSION .......................................................................................................... 13

LINDSAY & STONEBARGER
A Professional Corporation

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006)............ 4

*Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995)........................ 5

*Boyer v. Snap-On Tools, Corp.*, 913 F.2d 108 (3rd Cir. 1990) .................... 3

*Breitman v. May Co. California*, 37 F.3d 562 (9th Cir. 1994) .................... 10

*Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005) ........ 12

*California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004) ........ 4

*Gaus v. Mills Inc.*, 980 F.2d 564 (9th Cir. 1992)............................ 3, 4

*Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941) ...................... 4

*Industrial Tectonic, Inc. v. Aero Alloy*, 912 F.2d 1090 (9th Cir. 1990) ........ 10

*Krasnov v. Dinan*, 465 F.2d 1298 (3rd Cir. 1972)............................ 12

*Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994 (9th Cir. 2007) .......... passim

*Moore v. Genesco, Inc.*, 2006 U.S. Dist. LEXIS 71115 (N.D. Cal. Sep. 20, 2006)........ 6

*Rippee v. Boston Market Corp.*, 408 F.Supp.2d. 982 (S.D. Cal. 2005)............ 5

*Sanchez v. Monumental Life Ins. Co.*, 102 F.Supp.3d 398 (9th Cir. 1996) .......... 3, 5, 9

*Saulic v. Symantec Corp.*, 2007 WL 5074883 .................... 8, 9, 10

*Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373 (9th Cir. 1997) ........ 5

*Tosco Corp. v. Communities For A Better Environment*, 236 F.3d 495 (9th Cir. 2001)....... 10, 11

**STATE CASES**

*Linder v. Thrifty Oil*, 23 Cal.4th 429 (2000) ..................... 7

**FEDERAL STATUTES**

28 U.S.C. § 1332........................................................ 2

28 U.S.C. § 1332(d) .................................................... 3, 13

28 U.S.C. § 1332(d)(2) ................................................ 1, 2, 10

28 U.S.C. § 1332(d)(3) ................................................ 12

28 U.S.C. § 1332(d)(4) ................................................ 3, 12

28 U.S.C. § 1447(c) .................................................... 3

*LINDSAY & STONEBARGER*
*A Professional Corporation*

# STATE STATUTES

California Civil Code § 1747.08 ................................................................................................ 2

California Civil Code § 1747.08(a)(2) .................................................................................... 2, 7

California Civil Code § 1747.08(e) .......................................................................................... 6, 7

LINDSAY & STONEBARGER
A Professional Corporation

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 8, 2008, at 12:00 p.m. or as soon thereafter as counsel may be heard, in Courtroom 9 of the above-entitled court, located at 940 Front Street, San Diego, California 92101, Plaintiff Leslie Johnson ("Plaintiff") will, and hereby does, move this Court for an order remanding the above-entitled action to the Superior Court of California for the County of San Diego.

This motion is brought on the grounds that Defendant's removal of this action is improper because Defendant has failed to allege facts sufficient to establish federal jurisdiction under 28 U.S.C. § 1332(d)(2), including but not limited to establishing facts: (i) that the amount in controversy exceeds $5,000,000; and (ii) that it is not a citizen of California. Based on the foregoing, Plaintiff moves this Court, pursuant to 28 U.S.C. § 1332(d)(2), to remand this action back to state court. This motion shall be based on this Notice of Motion, on the accompanying Memorandum of Points and Authorities submitted concurrently and filed herewith, and on such evidence and argument as may be presented at the hearing.

Dated: August 11, 2008                    LINDSAY & STONEBARGER, APC

                                          HARRISON PATTERSON & O'CONNOR LLP


                                          By:  /s/ Gene J. Stonebarger
                                               Gene J. Stonebarger
                                               Attorneys for Plaintiff and the Class

LINDSAY & STONEBARGER
A Professional Corporation

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This Class Action lawsuit is based upon a California consumer protection statute known as the Song-Beverly Credit Card Act, codified at California Civil Code § 1747.08 *et seq.* Plaintiff brought this class action in state court, alleging that, during the relevant time period, Defendant violated California law, including Civil Code section 1747.08(a)(2), throughout California by collecting the telephone numbers of its customers during credit card purchase transactions at its retail stores operating under the name New York & Company.

On April 28, 2008, Plaintiff's attorneys were served with Defendant's Notice of Removal (hereinafter referred to as the "Notice") of Plaintiff's action from the Superior Court for San Diego County, in which the complaint was filed, to the United States District Court for the Southern District of California under the Class Action Fairness Act of 2005 ("CAFA") and on the argument that the amount in controversy allegedly exceeds the sum or value of $5,000,000. Under CAFA, which amended 28 U.S.C. § 1332 to add subsection (d), a district court may exercise jurisdiction if at least one member of a putative class consisting of no fewer than one hundred members is diverse from any defendant, and the aggregated claims of all class members create an amount in controversy in excess of $5,000,000. 28 U.S.C. § 1332(d)(2). However, Defendant failed to meet its burden of establishing facts necessary to meet these requirements.

In connection with its Notice, Defendant failed to submit any evidence sufficient to carry its burden. Specifically, Defendant asserts that the amount in controversy is in excess of $5,000,000 based on the argument that it processed at least 5,001 credit card purchases and that the maximum civil penalty authorized in section 1747.08 – $1000 – will be awarded for each credit card purchase transaction. This is insufficient for Defendant to carry its burden on removal. Defendant has not identified any additional facts, such as the requesting and recording of telephone numbers during credit card transactions, which would make these 5,001 credit card transactions in any way relevant to determining the amount in controversy alleged in the Complaint. This fatal flaw cannot be overlooked. Nor can Defendant simply postulate that the

LINDSAY & STONEBARGER
A Professional Corporation

1    maximum penalty under the statute will be awarded in this action. This type of speculation and

2    conjecture that has been rejected by the Ninth Circuit and cannot succeed in this instance.

3          Further, Defendant fails to allege specific <u>facts</u> to prove that it is not a "citizen" of

4    California. It is simply inadequate for Defendant to assert citizenship by alleging that it is

5    incorporated, or has its principal place of business, in another state. This is a significant

6    omission considering that the Court must remand this action back to state Court pursuant to 28

7    U.S.C. § 1332(d)(4) if Defendant is deemed a citizen of California under established Ninth

8    Circuit principles.

9          Given these significant flaws, which will be more fully explained below, Plaintiff's

10   motion for remand must be granted because Defendant failed to meet its burden for removal

11   under 28 U.S.C. § 1332(d).

**II.**

**PLAINTIFF'S MOTION FOR REMAND IS TIMELY**

14         The time limit to move the federal court to remand a case after removal depends on

15   whether the basis for the remand motion is a mere defect in the procedure used in the removal

16   process or goes to the lack of subject matter jurisdiction. The remand statute imposes a 30-day

17   limit for procedural defects. There is no time limit on a remand motion based on a lack of

18   subject matter jurisdiction. 28 U.S.C. § 1447(c); *See also* <u>Sanchez v. Monumental Life Ins. Co.</u>,

19   102 F.Supp.3d 398, 401 (9th Cir. 1996)(the district court may remand a removed case for lack of

20   subject matter jurisdiction any time before entry of judgment). Here, Plaintiff's remand motion

21   is based on a lack of subject matter jurisdiction, and, thus, has no time limit.

**III.**

**DEFENDANT BEARS THE BURDEN OF PROVING REMOVAL IS PROPER**

24         The law is settled. The removing party bears the burden of proving the existence of facts

25   to establish federal subject matter jurisdiction; there is a "strong presumption" against removal

26   jurisdiction. <u>Gaus v. Mills Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992); *see also* <u>Boyer v. Snap-On</u>

27   <u>Tools, Corp.</u>, 913 F.2d 108, 111 (3rd Cir. 1990)(on a motion to remand, the court is to "resolve

28   all contested issues of substantive fact in favor of the plaintiff…").

LINDSAY & STONEBARGER
A Professional Corporation

1    As the Ninth Circuit recently recognized, "[t]he removal statute is strictly construed

2    against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party

3    invoking the statute." <u>California ex rel. Lockyer v. Dynegy, Inc.</u>, 375 F.3d 831, 838 (9th Cir.

4    2004). Thus, the removing party bears the burden of extinguishing any doubt as to the district

5    court's jurisdiction. <u>Gaus</u>, 980 F.2d at 566 (district courts are to reject removal jurisdiction "if

6    there is any doubt as to the right of removal in the first instance").

7    It is further settled that CAFA did not change the burden of proof regarding removal

8    jurisdiction. <u>Abrego Abrego v. Dow Chemical Co.</u>, 443 F.3d 676, 685 (9th Cir. 2006). In

9    <u>Abrego Abrego</u>, the defendants argued that federal courts should interpret CAFA expansively

10   and resolve all doubts in favor of removal. The Ninth Circuit expressly rejected this approach

11   holding that "under CAFA the burden of establishing removal jurisdiction remains, as before on

12   the proponent of federal jurisdiction." <u>Id</u>. In so holding, the Ninth Circuit expressly relied on

13   Supreme Court precedent which holds that the statutory procedures for removal are strictly

14   construed:

15       The traditional rule of burden allocation in determining removal
         jurisdiction was meant to comport with what the Supreme Court
16       has termed "the dominant note in the successive enactments of
         Congress relating to diversity jurisdiction," that is, "jealous
17       restriction, of avoiding offense to state sensitiveness, and of
         relieving the federal courts of the overwhelming burden of
18       'business that intrinsically belongs to the state courts' in order to
         keep them free for their distinctive federal business." <u>Id</u>. (<i>quoting</i>
19       <u>Indianapolis v. Chase Nat'l Bank</u>, 314 U.S. 63, 76 (1941)).

20   It is precisely because the procedures for removal are strictly construed that the <u>Abrego</u>

21   <u>Abrego</u> Court held that the burden of establishing federal subject matter jurisdiction under

22   CAFA remains with the proponent of removal. As the removing party, Defendant has the burden

23   of proving federal subject matter jurisdiction under CAFA.

IV.

24

25   **DEFENDANT HAS FAILED TO SHOW THAT THE AMOUNT IN CONTROVERSY IN
     THIS CASE EXCEEDS $5,000,000**

26

27   Unless an amount is specifically pled and prayed for in a complaint, the defendant bears

28   the burden to prove that the amount in controversy has been satisfied. <u>Abrego Abrego</u>, 443 F.3d

LINDSAY & STONEBARGER
A Professional Corporation

1   at 683.  To meet such a burden "[t]he defendant must provide evidence that it is 'more likely

2   than not' that the amount in controversy satisfies the federal diversity jurisdictional amount

3   requirement." Id.; *see also* Sanchez, 102 F.3d at 404.  This requires Defendant to provide facts

4   supporting its assertions as to the minimum jurisdictional requirement.  Rippee v. Boston Market

5   Corp., 408 F.Supp.2d. 982, 984-85 (S.D. Cal. 2005).  More precisely, if the express allegations

6   are "unclear," then the "mere possibility that the jurisdictional amount is satisfied" by the

7   pleading is not enough. Sanchez, 102 F.3d at 403; *see* Singer v. State Farm Mut. Auto. Ins. Co.,

8   116 F.3d 373, 377 (9th Cir. 1997)("Removal 'cannot be based simply upon conclusory

9   allegations' where the ad damnum is silent." (*quoting* Allen v. R & H Oil & Gas Co., 63 F.3d

10   1326, 1335 (5th Cir. 1995)).

11        In the case at bench, the Complaint does not specify an amount of damages.  Defendant

12   carries the burden in this case to prove that it is "more likely than not" that the amount in

13   controversy exceeds $5,000,000.  However, Defendant fails to plead sufficient facts to meet this

14   burden.  Instead, Defendant performs a simple calculation – multiplying the maximum statutory

15   penalty of $1000 under California Civil Code section 1747.08(e) by the supposed number of

16   credit card purchase transactions during the class period (which according to Defendant exceeds

17   5,001) to arrive at a figure of at least $5,000,000.  Defendant's approach is fatally flawed.

18        In Lowdermilk v. United States Bank Nat'l Assoc., 479 F.3d 994 (9th Cir. 2007), the

19   Ninth Circuit rejected the notion that the maximum penalty permissible under a statute must be

20   used to determine the amount in controversy.  The Court continued to find that defendant's

21   calculation was wholly speculative as it failed to identify the actual number of individuals who

22   were members of the class at issue.  Here, Defendant's Notice, as will be further explained

23   below, suffers from these same incurable defects.

24   **A.    Defendant Cannot Meet Its Burden To Establish The Amount In**
        **Controversy Is Satisfied By Arguing That A $1,000 Penalty Will Be Imposed**
25        **For Each Violation.**

26        The Ninth Circuit has made it clear that under CAFA it is improper to assume maximum

27   statutory penalties would be awarded without actual proof.  In Lowdermilk, *supra*, the Ninth

28   Circuit found that the defendant's calculation with respect to the amount in controversy were

LINDSAY & STONEBARGER
A Professional Corporation

LINDSAY & STONEBARGER
A Professional Corporation

1  "weak" and insufficient to carry its burden to prove the source of the district court's removal

2  jurisdiction. Specifically, the Ninth Circuit criticized the defendant for assuming that "all class

3  members would be entitled to the maximum damages under Oregon law, but provid[ing] no

4  evidence to support this assertion." <u>Lowdermilk</u>, 479 F.3d at 1001. Indeed, the Ninth Circuit

5  paid special attention to the fact that plaintiff alleged she was "owed 'up to 30 days' of penalty

6  wages". <u>Id</u>. Thus, because Plaintiff had not demanded exactly 30 days of penalty wages, it was

7  improper for defendant to simply multiply the alleged number of class members by the sum of

8  the maximum penalty permissible under the statute. <u>Id</u>. This finding was due to the fact that:

> Many employees may have been paid only a few days late and,
> consequently, would be entitled to fewer days of penalty wages.
> Holding all other factors constant, if all 7,571 potential members of
> the class were paid only one day late, the aggregate claim would be
> worth only $ 439,118. In order to break the $5,000,000 minimum
> [of CAFA], all members of the class would have to be paid on
> average twelve days late. We have no evidence to support such a
> supposition. The problem is only compounded if Defendant is
> wrong about both the class size and the number of late days.
> Again, absent more concrete evidence, it is nearly impossible to
> estimate with any certainty the actual amount in controversy.

15 <u>Id</u>.

16       Likewise, in <u>Moore v. Genesco, Inc.</u>, 2006 U.S. Dist. LEXIS 71115 (N.D. Cal. Sep. 20,

17 2006), the Court found it improper to merely assume the maximum penalty that might be

18 authorized under a statute as one component of measuring the amount in controversy.

19 Specifically, the <u>Moore</u> Court denied CAFA jurisdiction when the defendant made the

20 assumption that "the maximum [amount] allowable by California state law" would be imposed

21 but did so, according to the Court, "without any evidentiary support" to be true. <u>Id</u>. at 17-18.

22 Thus, the Court concluded "that Defendant's assumptions and rough calculations fail[ed] to

23 prove by a preponderance of evidence that the claims of the proposed class satisfy CAFA's

24 minimum amount in controversy." <u>Id</u>. at 19.

25       Here, Defendant has improperly asserted in its Notice the blanket proposition that the

26 maximum penalty under the statute – $1,000 – will be imposed. *See* Notice at 3:18-20. But

27 California Civil Code § 1747.08(e) does not set a specific penalty. Rather, it provides for a

28 mandatory penalty **not to exceed** $250 for the first violation and $1000 for each subsequent

1  violation. Cal. Civ. Code § 1747.08(e); *see* <u>Linder v. Thrifty Oil</u>, 23 Cal.4th 429, 447 (2000).

2  Nevertheless, Defendant simply assumes that, if found in violation of section 1747.08(a)(2) the

3  <u>maximum statutory penalty</u> will be imposed. Defendant supports such a contention with no facts

4  – an omission of particular importance. Indeed, all the facts which would justify imposing the

5  maximum penalty are solely within Defendant's control. For example, did Defendant knowingly

6  violate California Civil Code § 1747.08(a)(2) or was it an innocent mistake? Did Defendant use

7  the personal identification information it unlawfully collected in an unlawful manner, such as

8  tracking its customers, or did it simply store the information? Did Defendant transfer the

9  unlawfully collected personal identification information to others, thereby increasing the risk for

10  identity theft for its customers?

11       Defendant's Notice is silent on these issues, and it is just as likely that a penalty of

12  $10.00, $50.00 or $100.00 per violation would be awarded. As such, Defendant's Notice fails to

13  plead facts justifying the imposition of a specific penalty. Therefore, any calculation based on

14  the maximum amount allowed under the law is nothing more than a theoretical possibility based

15  on speculation, not evidence or facts.

16       **B.**    **Defendant Has Failed To Establish Any Factual Connection Between Its**

17               **5,001 Credit Card Transactions And The Number Of Class Members.**

18       The law is clear. The removing defendant, in a state civil penalty suit which is removed

19  to federal court, bears the burden to establish that the number of class victims upon which the

20  penalty is computed are shown to have been actual victims of the wrongdoing and hence

21  members of the proposed class. *See* <u>Lowdermilk</u>, 479 F.3d. at 1001.

22       In <u>Lowdermilk</u>, the Ninth Circuit found that the defendant had made a deficient showing

23  of proof to carry its burden. In particular, the Court found that the defendant's motion suffered

24  from a fatal flaw – a failure to show a connection between the people identified and their

25  respective membership in the proposed class. The Ninth Circuit stated:

26           Defendant provides thin support for how it arrived at these
         numbers. John M. Burnside, a Human Resource employee of U.S.

27           Bank, filed a declaration asserting that 7,571 employees were
         terminated in Oregon between January 1, 2000 and April 1, 2006.

28

LINDSAY & STONEBARGER
A Professional Corporation

1
2
3
4
5
6

> However, <u>he does not specify how many of these employees were hourly employees using the time sheets at issue; only employees thus situated would qualify as class members. The omission is significant.</u> Assuming all other factors are held constant, if the CAFA minimum of 100 former employees qualified as class members, Plaintiffs claim would be worth only $174,000. Under Defendant's assumptions, the class would require 2,874 former employees to break the $ 5,000,000 statutory minimum. It is likely that some of these 7,571 former employees would qualify for the class, but is far from clear that 2,874 former employees out of 7,751 qualify. <u>Id.</u> at 1001 (emphasis added).

7    The Court's reasoning and holding are clear and indisputable. Because the defendant did not

8    identify the number of <u>hourly</u> employees who were actually within the proposed class which was

9    at issue in the case, there was no connection between the number cited by defendant and the civil

10   penalty plaintiff was pursuing under Oregon law. Because the defendant's offer of proof left the

11   number of employees wholly unrelated to the class definition, the defendant had failed to meet

12   its burden of proof and remand was mandated.

13       In this case, <u>Lowdermilk</u> is instructive, controlling, and dispositive. Defendant's Notice

14   fails to offer any evidence which would establish as a fact that there are at least 5,001 class

15   members to support its assertion that there is at least $5,000,000 in controversy. Plaintiff's

16   Complaint alleges that the class she purports to represent through this action includes: "all

17   persons in California from whom Defendant requested and recorded personal identification

18   information in conjunction with a credit card transaction." *See* Complaint at ¶8, ¶22. All

19   Defendant has presented is a declaration in which it asserts that it processed at least 5,001 credit

20   card purchases in California. *See* Notice at 3:25; Declaration of Charles Woodworth at ¶3. Yet,

21   this does not establish that there are at least 5,001 class members, as Defendant fails to show that

22   even one of the 5,001 processed credit card purchases resulted in the requesting and recording of

23   personal identification information – the very factual issues that identify the class in this case.

24   This is wholly insufficient, and Defendant has not satisfied its burden with its Notice. The Ninth

25   Circuit has been resolute in its holding – merely stating a number of transactions is insufficient

26   when they are shown to be of no connection to the class identified in the complaint. *See*

27   <u>Lowdermilk</u>, 479 F.3d at 1001; *but see* <u>Saulic v. Symantec Corp.</u>, 2007 WL 5074883 at *8-9,

28   slip op. (C.D. Cal. Dec. 26, 2007)(finding that the removing defendant <u>had</u> satisfied its burden by

LINDSAY & STONEBARGER
A Professional Corporation

1  proving a connection between number of credit card transactions and number of class members).

2  Thus, because Defendant's Notice presents a factual presentation identical to the deficient

3  showing made by the defendant in <u>Lowdermilk</u>, remand is mandated.

**C.    The Clear Language In Plaintiff's Complaint Renders Any Reliance On <u>Saulic v. Symantec Corp.</u> Improper.**

6       Plaintiff anticipates that Defendant will rely on <u>Saulic v. Symantec Corp.</u>, *supra*, to

7  support its opposition to Plaintiff's Motion.  However, any reliance on <u>Saulic</u> is misplaced for

8  two reasons.  First, though the <u>Saulic</u> Court did utilize the maximum possible penalty in

9  determining the amount in controversy, it did so because the plaintiff had prayed for the

10  maximum penalty in the complaint.  Indeed, the <u>Saulic</u> Court held that had the plaintiff's

11  complaint <u>not</u> contained a prayer for the maximum civil penalty under section 1747.08(e), the

12  defendants would have had the burden to prove, as a matter of reasonable probability, that the

13  amount in controversy was $5,000,000. <u>Saulic</u>, 2007 WL 5074883 at *7.  Specifically, the <u>Saulic</u>

14  Court found that:

> Plaintiff could have 'remained silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy,' thereby requiring the removing party to 'show the stakes of litigation... given plaintiffs actual demand.' <u>Id</u>. (internal quotations omitted)(citations omitted).

18      It is clear that <u>Saulic</u> has no application to the instant matter as the entire decision was

19  based upon the fact that the plaintiff demanded a specific prayer of $1,000 per class member.  In

20  this case, the complaint prays for statutory penalties of "<u>up to</u> $1000 per violation." *See* Notice

21  at 3:18-20 (emphasis added).   In other words, the prayer in this case is in complete accord with

22  the guidance issued by the <u>Saulic</u> Court.  This is no minor conformity.  Indeed, the <u>Saulic</u> Court

23  clearly indicated that <u>if</u> the complaint before it had <u>not</u> included a demand for the <u>statutory</u>

24  <u>maximum</u>, no federal jurisdiction would have existed unless the removing defendant produced

25  adequate evidence as required in <u>Sanchez</u>.  <u>Id</u>.

26      Moreover, the present action is materially different than <u>Saulic</u> due to the fact that in this

27  case, Defendant has failed to tether the number of processed credit card purchases to the class

28  definition in the Complaint.  In <u>Saulic</u>, the Court found that the defendant provided the Court

1   with sufficient evidence that each of the individuals identified by the defendant satisfied the class

2   definition set forth in the complaint.  In other words, the court found that the defendant had met

3   is burden by providing a connection between the number of identified credit card customers and

4   the number of class members. <u>Saulic</u>, 2007 WL 5074883 at *8.  As explained above in section

5   IV(B), *supra*, Defendant has failed to make any such showing, and provides yet another reason

6   why the present action is readily distinguishable from Saulic.

7                                                    **V.**

8   **DEFENDANT HAS FAILED TO PLEAD SUFFICIENT FACTS TO ESTABLISH**
    **THAT IT IS NOT A CITIZEN OF CALIFORNIA**
9

10          As set forth in its Notice, Defendant removed this Action under CAFA, pursuant to 28

11  U.S.C. § 1332(d)(2), which provides in relevant part:

12              The district courts shall have original jurisdiction of any civil
                action in which the matter in controversy exceeds the sum or value
13              of $5,000,000, exclusive of interest and costs, and is a class action
                in which...
14

15              (A) any member of a class of plaintiffs is a citizen of a State
                    different from any defendant.

16          For purposes of diversity jurisdiction, a corporation is a citizen in the state of its

17  incorporation, as well as in the state of its principal place of business.  <u>Breitman v. May Co.</u>

18  <u>California</u>, 37 F.3d 562, 564 (9th Cir. 1994).

19          The Ninth Circuit determines a corporation's principal place of business under two tests

20  the "place of operations" test and the "nerve center" test.  <u>Industrial Tectonic, Inc. v. Aero Alloy</u>,

21  912 F.2d 1090, 1092 (9th Cir. 1990); <u>Tosco Corp. v. Communities For A Better Environment</u>,

22  236 F.3d 495, 500 (9th Cir. 2001).  Under the "place of operations" test, a corporation's principal

23  place of business is in the state which contains a substantial predominance of corporate

24  operations.  The "nerve center" test locates a corporation's principal place of business in the state

25  where the majority of its executive and administrative functions are performed.  <u>Industrial</u>

26  <u>Tectonic, Inc.</u>, 912 F.2d at 1092-93.

27          The Ninth Circuit follows the rule that the two tests are to be applied in a prescribed

28  order.  <u>Id</u>. at 1094.  Under this rule, the "place of operations" test controls unless a party

LINDSAY & STONEBARGER
A Professional Corporation

1    demonstrated that its activities do not substantially predominate in any one state. <u>Tosco Corp.</u>,

2    236 F.3d at 500.

3         The applicable test to determine where a corporation has it "place of operations" was

4    clarified by the Ninth Circuit in <u>Tosco</u>. The <u>Tosco</u> Court set forth a list of relevant factors that -

5    must be considered, including (1) the location of employees; (2) the location of tangible property

6    owned by the corporation; (3) where production activities take place; (4) sources of income and

7    profits; and (5) where sales take place. <u>Id</u>. Substantial predominance does not require the

8    majority of a corporation's total business activity to be located in one state, but instead, requires

9    only that the amount of the corporation's business activity in one state be significantly larger

10   than any other state in which the corporation conducts business. <u>Id</u>.

11        In this case, Defendant's Notice completely ignores the "place of operations" test and the

12   factors used to determine substantial predominance. The Notice is silent as to the number of

13   stores and employees it has in California compared to other individual states. Likewise, the

14   Notice is also silent on the location of Defendant's production activities and sources of income,

15   including the amount of sales generated in California compared to other individual states.

16        Defendant can not simply allege, in the conclusory fashion which it did, that its principal

17   place of business is in New York. Defendant is required to allege facts to prove that its principal

18   place of business, under the "place of operations" test is not California. Thus, Defendant's

19   failure to sufficiently plead its "citizenship" is fatal to removal jurisdiction under CAFA.

20                                              **VI.**

21   **DEFENDANT HAS FAILED TO ALLEGE ANY FACTS TO PROVE THE ULTIMATE**
     **SOURCE OF THIS COURT'S POWER OVER THIS ACTION**
22

23        As discussed above, Defendant bears the burden of proving removal was proper, i.e. that

24   federal subject matter jurisdiction under CAFA exists. However, if a Defendant establishes

25   jurisdiction under CAFA, then it is Plaintiff's burden to prove the applicability of the exceptions

26   set forth in CAFA. The Home State exception to CAFA provides in pertinent part:

27              A district court may, in the interests of justice and looking at the
                totality of the circumstances, decline to exercise jurisdiction under
28              paragraph (2) over a class action in which greater than one-third

LINDSAY & STONEBARGER
A Professional Corporation

PLAINTIFF'S MPA IN SUPPORT OF          11      CASE NO.:  008CV0766-LAB (NLS)
MOTION FOR REMAND

but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed… 28 U.S.C. § 1332(d)(3).

The Local Controversy exception to CAFA provides in pertinent part:

A district court shall decline to exercise jurisdiction under paragraph (2) (over a class action in which) .. (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally brought.  28 U.S.C. § 1332(d)(4).

Here, Defendant has made it impossible for Plaintiff to meet his burden regarding applicability of CAFA's exceptions.  Defendant has failed to allege any facts regarding its citizenship, yet remains in sole control of the only facts that would permit Plaintiff to meet her burden.  Accordingly, Plaintiff requests that this Court implement the traditional rule regarding removal jurisdiction and require Defendant to set forth facts leaving no doubt as to this Court's power to adjudicate this matter.  See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 447-48 (7th Cir. 2005)("When the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with information – so that the choice between state and federal court may be made accurately – is much to be desired.").

In this case, Plaintiff's Complaint clearly provides that she seeks to represent "all persons in California from whom Defendant requested and recorded personal identification information in conjunction with a credit card transaction."  See Complaint at ¶8, ¶22.  If Defendant challenges that less than two-thirds of the class members are not California citizens in this case, then Defendant must provide evidence since it is the sole party in possession of the information necessary to determine the citizenship of the class members.  As alleged in the Complaint, Defendant unlawfully collected the telephone numbers of its California customers during credit card purchase transactions.  Therefore, Defendant knows who the class members are and where they live.  Indeed, residency is prima facie evidence of domicile.  Krasnov v. Dinan, 465 F.2d 1298, 1300 (3rd Cir. 1972).

Notwithstanding its exclusive knowledge, Defendant failed to put forth any evidence in its Notice regarding its citizenship (e.g. the "substantial predominance" factors discussed above) or the citizenship of the class members.  Rather, Defendant opted to simply state the exceptions

1    to removal under 28 U.S.C. § 1332(d) and 1446 do not apply.  *See* Notice 5:05-06.  This is

2    simply insufficient for this Court to ultimately determine the suitability of its jurisdiction over

3    this case.

4                                               **VII.**

5                                          **CONCLUSION**

6           Defendant's Notice fails to allege facts sufficient to establish federal subject matter

7    jurisdiction under CAFA.  Thus, remand in this action is both proper and warranted.

8

9    Dated: August 11, 2008                    LINDSAY & STONEBARGER, APC

10                                             HARRISON PATTERSON & O'CONNOR LLP

11

12

13                                           By:   /s/ Gene J. Stonebarger
                                                  Gene J. Stonebarger
14                                                Attorneys for Plaintiff and the Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LINDSAY & STONEBARGER
A Professional Corporation